UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:13CR-29-JHM

UNITED STATES OF AMERICA                                    PLAINTIFF

VS.

JAMES S. FALLER, II                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, James S. Faller, II, to request a Franks hearing and to suppress all evidence obtained from a search of his home and office. [DN165]. Fully briefed, this matter is ripe for decision. For the reasons that follow, Defendant's motion is **DENIED**.

## I.  BACKGROUND

Defendant, James S. Faller, II, is charged with, *inter alia*, tax evasion and failure to timely file a U.S. Individual Income Tax Return, Form 1040, for the 2006 through 2009 tax years.[1]  On November 3, 2010, Special Agent Matthew Sauber (the "affiant") submitted an application for a search warrant [Application and Affidavit for Search Warrant "Appl. and Aff.," DN 173-1] for Defendant's residence and office located at 530 G.V. Hale Avenue, Russell Springs, Kentucky, to seize papers and effects related to Defendant's tax returns.  The search warrant was signed by former United States Magistrate Judge Goebel.  On November 4, 2010, special agents of the Internal Revenue Service executed the search warrant.  Defendant contends

---

[1] Defendant is also charged with willfully attempting to evade the payment of a Trust Fund Recovery Penalty owed by him as a result of his work as president of Call Center Communications, Inc. [Indictment, DN 1, at ¶¶ 7, 10-11]. This is relevant to the extent that the application for the search warrant mentioned Defendant's involvement with the company.  However, at the time of the application for the search warrant, the affiant only indicated probable cause for tax evasion and failure to timely file his individual tax returns. [Appl. and Aff., DN 173-1, at ¶ 3].

that the affiant intentionally made false statements or had a reckless disregard for the truth in applying for the search warrant.   As a result, Defendant maintains that all evidence seized incident to the search must be suppressed.

## II.  STANDARD OF REVIEW

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "When probable cause is required, it is an obvious assumption that there will be a truthful showing of probable cause." United States v. Witherspoon, 2010 WL 724663, *2 (W.D. Ky. Feb. 25, 2010) (citing Franks v. Delaware, 438 U.S. 154 (1978)). In challenging the veracity of statements contained in the affidavit, the defendant must prove by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. at 155–56. "If this is established by the defendant, then the false material must be set aside in determining whether the remaining content is sufficient to establish probable cause." Witherspoon, 2010 WL 724663, *2 (citing Franks, 438 U.S. at 156).  In the case where the remaining material fails to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  Franks, 438 U.S. at 156.

To be entitled to a Franks hearing, a defendant must (1) "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." United States v. Graham, 275 F.3d 490, 505 (6th Cir. 2001) (citation and internal quotation marks omitted).  The Sixth Circuit's "well-settled framework for Franks hearings requires a defendant to 'point to *specific* false statements' and

then 'accompany his allegations with an offer of proof.'" United States v. Green, 572 Fed. Appx. 438, 442 (6th Cir. 2014) (quoting United States v. Cummins, 912 F.2d 98, 101, 103 (6th Cir. 1990)). Further, while alleged omissions on the part of the affiant are not excluded from consideration under Franks, "to be constitutionally problematic, the material must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause." United States v. Carpenter, 360 F.3d 591, 596-97 (6th Cir. 2004). This does not mean, however, that officers must divulge every piece of exculpatory evidence in the affidavit. Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir. 1998) ("To interweave the Brady due process rationale . . . places an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail . . . to prove the negative proposition that no potentially exculpatory evidence had been excluded.").

### III. ANALYSIS

In Defendant's motion for a Franks hearing, he alleges Special Agent Sauber intentionally or recklessly made multiple false statements and omissions in the affidavit submitted for the search warrant. Specifically, Defendant contends that the affiant relied entirely on a confidential source (the "CS") without corroborating the veracity of the CS's statements. Defendant also asserts that it would have been impossible for the affiant to verify CS's statements because they were false. In response, the United States argues that the "false statements" identified by the Defendant were accurate and sufficiently corroborated by the affiant. Alternatively, the United States posits that even if some of the statements were excluded from consideration for the purposes of probable cause, the affidavit would still contain more than enough evidence to support probable cause.

The Court also believes it prudent at this early juncture to clarify an important point regarding the purposes of a Franks analysis for the parties. It has become clear that Defendant

3

intends to use a <u>Franks</u> hearing to disprove all charges against him; however, a <u>Franks</u> hearing is the improper forum. <u>Mays</u>, 134 F.3d at 816 ("[T]he probable cause determination in *Franks,* derived from the Fourth Amendment, involves no definitive adjudication of innocence or guilt . . . ."). Particularly, a discussion of those charges involving payroll taxes for Call Center Communications, Inc. (Count II) and making a false statement for Wage Earners and Self-Employed Individuals, Form 433-A, is irrelevant to the probable cause analysis because the application for the search warrant did not allege probable cause for these crimes. Additionally, the events that transpired following the execution of the search warrant are unrelated to <u>Franks</u>. Therefore, the focus of this Opinion will be on probable cause for failure to timely file taxes and tax evasion.

### A. Confidential Source

Before discussing the details of each party's position, the Court finds it necessary to clarify the basis for obtaining a <u>Franks</u> hearing, specifically as it applies to statements made by a confidential source. In situations where the majority of the evidence in an affidavit for a search warrant derives from a confidential source, courts "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances." <u>United States v. Helton</u>, 314 F.3d 812, 819 (6th Cir. 2003). "These factors are not evaluated independently; rather, the presence of more of one factor makes the others less important. For instance, the more reliable the informant, the less detail the informant must provide in his tips before a magistrate can find probable cause." <u>United States v. Ferguson</u>, 252 Fed. Appx. 714, 721 (6th Cir. 2007) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 233 (1983)). However, even when there is a question concerning the reliability of the confidential source, "probable cause may exist 'when there is some independent corroboration by the police of the informant's information.'" <u>United States v.</u>

Gregory, 311 Fed. Appx. 848, 856 (6th Cir. 2009) (quoting United States v. Jackson, 470 F.3d 299, 307 (6th Cir. 2006)).

Another issue that arises throughout the parties' briefs involves the veracity of the CS. Particularly, throughout Defendant's motion for a Franks hearing, he consistently attributes statements to the affiant when they were actually made by the CS.   In fact, the application for the search warrant specifically delineated between statements made by each party as evidenced by the two sections entitled "Employee's Statements" and "Statements Made by the CS that have been Corroborated."   It is vital to properly distinguish between the two types of statements because the key inquiry for Franks is whether the *affiant* intentionally or recklessly included a false statement, not the CS.   United States v. Fields, 229 F.3d 1154, *3 (6th Cir. 2000) ("A Franks hearing requires that the defendant make a substantial preliminary showing that the affiant, *rather than the informant,* deliberately or recklessly included false information in the affidavit." (emphasis added)); see also Mays, 134 F.3d at 816 ("Franks recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." (citing Franks, 438 U.S. at 165)).   Therefore, while the veracity of the CS is important in evaluating probable cause, ultimately, Franks turns on the awareness of the affiant of any false statements.

## B.  Failure to Timely File Tax Returns

The United States obtained the search warrant for Defendant's home and office in order to gather evidence concerning Defendant's alleged tax evasion and failure to file his 2006, 2007, 2008, and 2009 individual income tax returns. [Appl. and Aff., DN 173-1, at ¶ 3].   The United

States asserts that the affidavit set forth sufficient information to establish probable cause for tax evasion and failure to file under 26 U.S.C. §§ 7201, 7203.

Every individual who earns a threshold amount of income is required to file a tax return, 26 U.S.C. § 6012(a)(1)(A), and the failure to timely do so may lead to prosecution under 26 U.S.C. § 7203. A prosecution under this section entails a demonstration by the United States that the defendant: "(1) was required to file a return, (2) failed to file a return, and (3) acted willfully in failing to file." United States v. Hassebrock, 663 F.3d 906, 919 (7th Cir. 2011) (citation omitted). The first two elements are fairly self-explanatory as they simply require a showing that a defendant had the requisite gross income and that he failed to file taxes. For the third element, willfulness, the United States must "prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201 (1991).

To establish that Defendant received enough income that would have required him to file tax returns, the affiant primarily relied on statements from the CS who worked for Defendant as his assistant from 2001[2] to until the time of the filing of the affidavit. [Appl. and Aff., DN 173-1, at ¶ 12]. While working for Defendant, CS observed Defendant receive checks made payable to Tanya Faller, Defendant's wife, from a client ("LG") in the amount of $7,000 to $8,000 per week for work done by Faller. Id. at ¶ 20. Defendant told CS that he had checks made payable to his wife because "he has tax liabilities, and has had his bank account levied." Id. In an attempt to corroborate this allegation, the affiant obtained eight checks recovered from an investigation of LG. Id. at ¶ 54. The checks were written by LG's wife and dated from 2006 to 2007.[3] Id. Of

---

[2] CS indicated a break in employment from approximately 2003 to 2005 due to Defendant's probation being revoked.
[3] The checks were dated: 5/13/2006; 5/23/2006; 5/27/2006; 6/02/2006; 6/16/2006; 6/30/2006; 7/10/2006; and 4/20/2007.

the eight checks examined, six of them were made payable to Tanya Faller, and the checks reflected amounts closer to $2,000 to $4,000, rather than the $7,000 to $8,000 reported by CS—a fact acknowledged by the affiant in the application.  Id. at ¶ 55.

Based on this information provided by CS and the corroboration by the affiant, the United States asserts that the application for a search warrant established probable cause for the first two elements of a violation of 26 U.S.C. § 7203.   Specifically, the United States maintains that the application clearly provided evidence that Defendant received enough income to require him to file a tax return and that he failed to timely file.   Defendant attempts to refute this assertion with a sworn affidavit by John Morgan, an attorney in Kentucky, who avers that "[o]n at least one occasion I was present when Mr. Faller personally hand delivered tax returns to Mr. Ambach." [Morgan 5/4/2011 Affirmation, DN 165-8, at ¶ 8].[4]  In Defendant's Reply, Defendant includes another affidavit by Mr. Morgan who states, "Mr. Faller and I met with Mr. Ambach and provided Mr. Ambach the Fallers previously filed tax returns and the return that was just completed by Mr. Long on behalf of the Fallers." [Morgan 4/21/2015 Affirmation, DN 185-2, at ¶ 21].   However, as aptly noted by the United States, Morgan's statement is devoid of any reference to which tax returns he actually saw Defendant submit to Mr. Ambach.  Of course, the obvious point should be noted that even if this meant that Defendant submitted his 2006, 2007, and 2008 returns in June of 2010, those returns would still be delinquent.   Moreover, the United States rebuts Morgan's affidavit with documentation showing that Defendant did not submit his returns until spring of 2011. [IRS Transcript, DN 173].[5]   The Court is unconvinced that Mr. Morgan's affirmations provide evidence that the affiant made a false statement or one with reckless disregard for the truth.

---

[4] John Ambach is a Revenue Officer of the IRS.
[5] The IRS received Defendant's 2006 and 2007 tax returns on March 21, 2011, 2008 return on May 11, 2011, and 2009 return on June 6, 2011.  [IRS Transcript, DN 173-2, at 2, 5, 8, 11].

As to the final prong, willfulness, the affiant corroborated statements by the CS that Defendant received multiple checks from a client and that he failed to file his tax returns for four consecutive years.  Both of these actions may be considered evidence of willfulness.  See United States v. Bishop, 264 F.3d 535, 550 (5th Cir. 2001) (noting wide range of activities can denote willfulness on the part of a defendant, including "failing to report a substantial amount of income" and "a consistent pattern of underreporting large amounts of income").  In connection with having checks made payable to Tanya Faller, the Court also may consider a taxpayer's attitude toward the payment of taxes in assessing willfulness.  United States v. Maga, 475 Fed. Appx. 538, 545 (6th Cir. 2012) (finding that it was not unreasonable to consider the taxpayer's "attitudes toward taxes" in determining whether the person "willfully disregarded his known duty to file tax returns").  Particularly, the affiant's corroboration of the checks tends to verify the CS's statements concerning Defendant's desire to avoid paying taxes.  In fact, the CS not only recounted a time when Faller acknowledged to the CS that he "owe[d] the IRS millions of dollars" but also described an instance where Faller became incensed after LG refused to make his payments an advance so that Defendant could avoid tax liability. [Appl. and Aff., DN 173-1, at ¶ 38].  While the United States provides more evidence of willfulness, the Court finds that these statements along with evidence of a pattern of failure to pay taxes sufficiently provided probable cause.  However, the Court will address the remaining evidence of willfulness when analyzing Defendant's allegations of false statements and omissions.

### C.   Tax Evasion

Pursuant to 26 U.S.C. § 7201, tax evasion consists three elements: "(1) the existence of a tax deficiency; (2) willfulness; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." United States v. Marashi, 913 F.2d 724, 735 (9th Cir. 1990) (citation

8

omitted).  Tax evasion involves "any conduct, the likely effect of which would be to mislead or to conceal."  Spies v. United States, 317 U.S. 492, 499, 63 S. Ct. 364, 368, 87 L. Ed. 418 (1943).  Although a non-exhaustive list, some examples of affirmative acts of tax invasion include "making false entries of alterations . . . concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal."  Id.

The facts supporting probable cause for tax evasion substantially overlap with those for failure to timely file income taxes.  Particularly, the United States claims that having LG make checks payable to Tanya Faller evinces affirmative steps to conceal income.  The Court agrees.  Additionally, the United States discusses the existence of multiple bank accounts and that Defendant owned property in the names of nominees.  However, the Court will discuss this in more detail when dealing with the specific allegations of misrepresentations on the part of the affiant.

Based on the information provided in the application and discussed above, the Court finds the United States provided sufficient evidence for probable cause for failure to timely file tax returns and tax evasion.  In other words, even if the Court were to deem all other material false and excludable, the warrant would still meet the probable cause standard.  Thus, the executed search warrant was valid.  Notwithstanding, the Court will examine Defendant's allegations of false statements on the part of the affiant.

### D.  Alleged False Statements and Omissions

#### 1.  Call Center

Defendant disclaims any involvement with the call center operated in Russell Springs, Kentucky.  The United States points out that it only included information concerning the call

center in order to provide background as to CS's relationship with Defendant. As previously noted, the United States did not allege probable cause for crimes related to the call center in the application for the search warrant even though the indictment contained charges regarding Defendant's activity with the call center. Nevertheless, the application for the search warrant indicated that the affiant corroborated the fact that Defendant acted as a director for The Call Center Communications, Inc. [Appl. and Aff., DN 173-1, at ¶ 45].

Defendant identifies five portions of the application that he asserts demonstrate false statements on the part of the affiant:

> #12 The agent falsely alleges in reference to the employment of CS, Sullivan; in 2001 *"while Faller was operating a call center in Russell Springs, Kentucky."* The agent doesn't even get his dates correct when he alleges that "Faller got out of jail in 2005 and Faller asked the CS to come back to work for him..."

> #15 Sauber "corroborated" that *"Faller was running the call center when the CS began working for Faller. Faller owned this business but, Faller did not own it on paperwork."*

> #30 Sauber wrote *"Faller also has personnel files on employees who worked for him while he was operating the call center."* This was an obvious attempt to lend credibility to the allegations in the affirmation that Faller owned the call center.

> #45 Sauber claims he "corroborated" "Faller owned the call center but on paperwork it was owned by Diddear Girrad (sic.)"

> #49 As they say, "*timing is everything*." Sauber came up with his mathematical calculation to show that since Faller was in jail and his release date correspond as to why the company did not file an annual report. Sauber wrote; *"The CS stated that Faller had his probation revoked and that Faller was sent back to jail in 2003 for approximately a year and a half. The date of the last annual report would correspond to the fact that Faller was in jail and unable to operate these entities and therefore they became inactive."*

[Def.'s Mot., DN 165, at 7-8, 10, 13-16]. As to the first three paragraphs identified by Defendant, he attributes those to the affiant despite the fact that the CS clearly made those statements. Next, to controvert the affiant's assertion concerning his relationship with the call

center, Defendant reproduces screenshots from the website of the Kentucky Secretary of State

for The Call Center Communications, Inc.  Although Defendant claims that his name in nowhere

on the documentation, the documents produced by the United States belie his claims.  The filings

with the Kentucky Secretary of State for The Call Center Communications, Inc. list Defendant as

the president and a director of the company. [Ex. 3, DN 173-3, at 2, 6].  Finally, Defendant's

concern about the timing discussed in the affiant's corroboration section is unclear.  Regardless,

even if the Court were to consider this statement false, it would fail to satisfy the second prong of

the <u>Franks</u> hearing requirement, i.e., the redacted evidence would alter the probable cause

determination.  Thus, the Court finds that these statements fail impact the probable cause

analysis.

### 2.  Letters from David Hicks

Defendant maintains that the United States knew that he had difficulties in filing his tax

returns and omitted this point in the application.  In fact, Defendant avers that his CPA, David

Hicks, had been in contact with the IRS the whole time prior to the execution of the search

warrant.  The United States responds by noting that the documents offered by Defendant lack

relevance to the <u>Franks</u> inquiry because they are irrelevant to the crimes alleged in the

application and fail to actually contradict the statements made in the affidavit.

In support of his position, Defendant offers two letters and an affidavit from Hicks that

indicate uncooperativeness on the part of the IRS in resolving Defendant's liabilities.[6] The first

letter addressed to "IRS Supervisor," dated July 17, 2006, describes how Hicks believes the IRS

---

[6] Defendant also states that "United States Judge Thomas Russell contacted [him] by writing and directed [him] to contact the late Phil Chance of the USAO in the Western District." [Mot. to Suppress, DN 165, at 5].  However, it is fairly clear that Judge Russell only contacted Defendant after receiving a packet of information from Defendant. Judge Russell's letter stated that he was returning the packet to Defendant and that "[i]f [Defendant] believe[d] a federal crime has been committed, [he] may bring that to the attention of the U.S. Attorney." [5/21/2008 Letter, DN 165-7].  The letter neither directs Defendant to take any specific action nor indicates that Judge Russell had a particular belief concerning the information sent to him.

is incorrect in assessing payroll taxes for a company known as CCC of Kentucky, Inc. [7/17/2006 Letter, DN 165-3].   Again, the problem is that the search warrant only alleged probable cause for Defendant's failure to timely file his individual tax returns and tax evasion, not for payroll taxes from CCC of Kentucky, Inc. [Appl. and Aff., DN 173-1, at ¶ 3].   For this reason, the Court finds this first letter irrelevant to the present matter.

The second letter from Hicks was sent to Jack Ford, another CPA for the Defendant, on January 8, 2010, and requests copies of the business and tax records that Ford was reproducing for the Fallers.  [1/8/2010 Letter, DN 165-4].   In addition to asking for assistance from Ford, Hicks writes, "Mr. Faller advised me that he made you aware that I have been in contact with the IRS for over three years in an attempt to obtain their help through the tax payer assistance program. To date those efforts have been unsuccessful." Id.   Hicks' sentiments concerning a lack of cooperation are mirrored in his affidavit.   Particularly, in the affidavit, Hicks noted that the IRS withheld documents that would have enabled him to complete Defendant's taxes.   [Hicks Aff., DN 165-5, at ¶¶ 5-7].   Defendant believes that the letter demonstrates a significant omission on the part of the United States.

At the outset, it should be reiterated that the bar for obtaining a Franks hearing based on an allegation of a material omissions is higher than that of an allegedly false statement. See, e.g., Graham, 275 F.3d at 506.   Here, Defendant argues that the affiant omitted the fact that he had been cooperating with the IRS and that the IRS had not been helpful.   Even presuming that this rises to the level of a material omission, the second step of Franks requires a demonstration that the omitted information would have had an impact on the probable cause determination.   At best, Defendant's proffered evidence concerning the lack of cooperation on the part of the IRS

amounts to disputed facts.[7]   This is the type of information that the higher bar for material omissions in <u>Franks</u> hearings is meant to address. <u>United States v. Fowler</u>, 535 F.3d 408, 415-16 (6th Cir. 2008) ("Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of <u>Franks</u> hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" (quoting <u>United States v. Martin</u>, 920 F.2d 393, 398 (6th Cir. 1990)).   For this reason, the Court finds that the omission of these facts would not result in a different determination as to probable cause.

### 3.   Property Held in the Names of Nominees

A portion of the application for the search warrant was dedicated to statements by the CS concerning property and accounts held for Defendant in the names of others.  The application for the search warrant discusses three types of properties that it is believed Defendant was holding in the names of others, including real estate, vehicles, and bank accounts.   Omitting the statements that were made by the CS, the Court finds three statements of corroboration questioned by Defendant:

> #56 Again, in this entry line, the CS [ ] is giving Sauber information he "corroborated" that he would have found to be false if he checked. Sullivan lists her and her husband's own company "Russell County Affordable Lawn Care" as an account and asset of Faller's, when in fact it was CS [ ] who borrowed money from Faller to start the business.

> #61 Sauber details the CS version of the purchase of the home. Sauber claims he corroborated the information alleging that "Faller paid $425,000.00 for this residence on August 20, 2007." Sauber admits that Faller's F-150 truck is registered to him and that the "(3) three vehicles are registered to Tanya."

> #62 "The CS stated that Faller was making payments to Konrad for the house."

---

[7] Although Hicks generally claims the IRS hindered his attempt to obtain documents prior to the execution of the search warrant in 2010, the specific references to missing files all relate to issues following the execution of the warrant. [Appl. and Aff., DN 165-5, ¶¶ 5-7, 20-24].   Any alleged instance of an omission after the search is irrelevant for the purposes of <u>Franks</u>.

[Def.'s Mot., DN 165, 16-17].

     The affiant sought to demonstrate that Defendant regularly attempted to keep property in the names of nominees in order to conceal his assets.  For some of the assets, Defendant concedes that the corroborated information was correct, including the $425,000 house that was held in the Tanya Faller Irrevocable Trust, the three vehicles held in his wife's name, and that he made payments to Konrad for the house. [Def.'s Mot., DN 165, at 17].  Defendant is correct in that probable cause cannot be established by solely corroborating the CS's statements that are public knowledge.  See United States v. Ingram, 985 F.2d 562 (6th Cir. 1993) ("[M]erely verifying public information such as addresses, phone numbers, license numbers, and even criminal records in not sufficient to corroborate an informant's statement.").  However, this is not the case here as affiant corroborated statements made by CS in other ways.  Instead, what is relevant is the fact that the use of nominee accounts can be considered in establishing an affirmative act for the purposes of tax evasion.  United States v. Threadgill, 572 Fed. Appx. 372, 385 (6th Cir. 2014) (noting that the use of nominee trust accounts could be indicative of an affirmative act to conceal assets for the purposes of tax evasion).  Therefore, Defendant's point that most of this information is public record does nothing to advance his argument for obtaining a Franks hearing.

     Turning to the instances where the affiant was unable to fully corroborate statements by the CS, this seems to be clearly indicated in the application.  Specifically, Defendant notes that Russell County Affordable Lawn Care, one of the bank accounts believed to be held by Defendant, is actually owned and operated by the CS.  The Court does not find the application misleading because the section avers that "[t]he CS has received mail from United Citizens Bank addressed to 'Russell County Affordable Lawn Care.'" [Appl. and Aff., DN 173-1, at ¶ 56].  If

14

the affiant had indicated that the account did belong to Defendant, then it is possible that the statement would have been susceptible to being proven false.  However, this is not what the affiant wrote.  Ultimately, the account may not belong to Defendant, but the purpose of <u>Franks</u> is not based upon a showing that all assertions are correct.  <u>Franks</u>, 438 U.S. at 164-65 (noting that the "truthful showing" required for the Fourth Amendment does not mean "'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct," but that the information offered "is believed or appropriately accepted by the affiant as true").  Here, the Court believes that the affiant properly corroborated, to the extent possible, the statements regarding the Russell County Affordable Lawn Care to the satisfaction of <u>Franks</u>.  Further, the Defendant offers no evidence to suggest this is incorrect other than an assertion that is unsupported by evidence.

### 4.  Other Objections

Defendant also makes several unsupported accusations concerning affiant's veracity and raises other issues he believes should have been disclosed in the application.  The United States offers evidence to rebut all of Defendant's claims.  The Court will briefly address each of Defendant's issues.

Defendant maintains that the affiant improperly listed Defendant's prior conviction in the Southern District of Florida.  Specifically, Defendant states the information contained in the affidavit was incorrect because he was actually a whistleblower in that case.  However, Defendant's conviction in the Southern District was upheld by the Eleventh Circuit.  <u>United States v. Murray</u>, 154 Fed. Appx. 740, 747 (11th Cir. 2005).  Defendant offers no evidence to support his position.

Defendant also claims that the affiant submitted the application for the search warrant without the involvement the U.S. Attorney's Office.  Defendant is misinformed as to this

allegation.   The United States has offered sufficient evidence to contradict Defendant's claim. [Ex. 5, DN 173-5].

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to request a <u>Franks</u> hearing and to suppress all evidence obtained from a search of his home and office [DN165] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 30, 2015

cc:  Defendant, *pro se*
     Counsel of record

16