UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                                                                      No. 1:13-cr-29-BJB

JIM S. FALLER, SR.                                                          DEFENDANT

### MEMORANDUM OPINION & ORDER

A federal jury found Jim Faller guilty in 2015 of multiple tax violations: attempting to interfere with the administration of the tax laws, attempting to evade or defeat a tax, filing false tax documents, and willfully failing to file a tax return. *See* Order Setting Sentencing Hearing (DN 234); Criminal Judgment (DN 357) (citing 26 U.S.C. §§ 7201, 7203, 7206(1), 7612). The judge who presided over Faller's trial sentenced him to concurrent terms of imprisonment that totaled 36 months, with 3 years' supervised release to follow. *Id.* The Sixth Circuit affirmed the convictions. *United States v. Faller*, 675 F. App'x 557, 559 (6th Cir. 2017).

Faller has now completed his sentence of imprisonment and supervised release, but still seeks to challenge his conviction. He has employed several litigation tools to do so—a *coram nobis* petition, a civil suit, an amicus brief, requests for hearings and expedition, supplemental briefing, a motion to disqualify all the judges in the Sixth Circuit, and a notice of a new defense theory. *See* DNs 405, 427, 437, 438, 439, 442, 443, 449, 451; *Faller v. United States Department of Justice, et al.*, No. 3:23-cv-526 (W.D. Ky. case filed Oct. 12, 2023). None of these efforts identify any flaw in his conviction or sentence that warrant revisiting it.

**A. Petition for writ of *coram nobis*.** Faller filed a petition for writ of *coram nobis* approximately 10 months after his supervised release ended. DN 405. "A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person … who is no longer 'in custody' and therefore cannot seek habeas relief." *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). *Coram nobis* is an "extraordinary writ" reserved for "'extreme cases' in which there were 'fundamental flaws in the proceedings.'" *United States v. Castano*, 906 F.3d 458, 462 (6th Cir. 2018) (quoting *United States v. Denedo*, 556 U.S. 904, 916 (2009)). It "is generally not appropriate for claims that could have been raised on direct appeal." *Id.* at 464. To receive relief, the petitioner bears the burden of showing "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which

probably would have altered the outcome of the challenged proceeding if it had been known." *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 1991). The petitioner also must show (4) that the writ is "necessary to remedy an ongoing civil disability." *Castano*, 906 F.3d at 463. Although Faller's arguments arguably address the first three elements to some extent, his petition clearly fails to meet the fourth element. And that failure alone is sufficient to deny the petition. *See United States v. Waters*, 770 F.3d 1146, 1147–48 (6th Cir. 2014) (affirming the denial of *coram nobis* based only on a lack of civil disability).

Faller's petition makes four arguments: (1) actual innocence based on new evidence allegedly received from the IRS; (2) a Due Process violation during the trial proceedings; (3) violation of his attorney-client privilege through the introduction of trial evidence; and (4) "ineffective assistance of counsel" regarding the Sixth Circuit's denial of his successive petition for rehearing. Petition at 15–23. Since filing this petition, Faller has also filed several "supplements" purporting to outline a conspiracy by government officials at the IRS and FBI to secure his false conviction and subject him to ongoing harassment. *See, e.g.*, DNs 423, 425, 435.[1]

Faller's petition fails for several reasons. The clearest is the lack of an "ongoing civil disability" stemming from his conviction. *Castano*, 906 F.3d at 463. He does not explain how the past conviction creates a civil disability redressable through *coram nobis*. An "ongoing civil disability" is (1) an actual, present harm (2) arising from an erroneous conviction (3) that is more than incidental. *See United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990). At times Faller arguably alludes to "reputational harm and economic harm," but these "cannot constitute civil disabilities for the purpose of *coram nobis* relief." *United States v. Brown*, No. 5:12-cr-79, 2022 WL 12399282, at *2 (E.D. Ky. Oct. 17, 2022); *see also Waters*, 770 F.3d at 1147 (reputational injury insufficient); *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988) (financial penalties insufficient). Enhanced penalties for subsequent convictions *may* arise to a civil disability, but not until they are actually imposed by a sentencing judge. *Castano*, 906 F.3d at 463. Although Faller mentions "enhanced penalt[ies] for a recidivist offender" in describing *coram nobis*, Petition at 13, he never asserts that he's suffered any such enhancement. Because this remains a speculative and inchoate risk, it doesn't suffice for *coram nobis*. *Castano*, 906 F.3d at 463.

---

[1] "Canadian Media," according to Faller, "discovered [a prosecuting] assistant U.S. Attorney was involved with CIA and Faller's reporting Adam pre-indictment exposed multiple crimes by multiple high-level officials." DN 425 at 2. This apparently refers to Rick Adam, Faller's co-defendant in a previous prosecution in the Southern District of Florida. *See United States v. Faller*, No. 97-cr-6063, DN 77 at 5, DN 954 at 3–4 (S.D. Fla. case filed May 15, 1997). Faller stated that his saga began when he reported Adam's crimes to state and federal authorities, who then initiated a prosecution that included Faller.

And although Faller apparently isn't a licensed attorney, any effects on his law-related activities likely also wouldn't rise to a civil disability. The petition includes only a single sentence making a general claim that his conviction is "preventing [him] from his professions of past,"[2] and "preventing his ability to get licenses, insurance, and other ordinary rights." Petition at 26. According to the Seventh Circuit, disbarment doesn't count unless the petitioner shows the conviction directly caused it (which Faller hasn't). *See Craig*, 907 F.2d at 659. Nor has Faller alleged that any license has been taken away from him or that he is pursuing one to resume work as an investigator or "legal consultant." *See, e.g.*, Petition at 2. He similarly fails to allege any facts regarding the loss or denial of any insurance policy. Without any specification whatsoever, Faller merely asserts the loss of "other ordinary rights." Petition at 26.

Even if he alleged legally cognizable civil disabilities, nowhere does Faller attempt to explain why they are an actual, present, and direct consequence of his conviction. *Compare* Petition at 26 *with Craig*, 907 F.2d at 658 ("desire to obtain a desirable job," "possibility of recovering a fine," and general "adverse effects of … erroneous convictions" are all insufficient to establish a civil disability). Residual reputational effects on his social and professional life are insufficient; otherwise every convicted person might be eligible for *coram nobis* relief, rendering the writ far less than extraordinary. *See, e.g.*, *Keane*, 852 F.2d at 204 ("A strong emotional interest is not enough to produce an Article III case or controversy, and a blot on one's escutcheon, divorced from any particular entitlement to a 'clean record,' does not even involve a liberty interest."). Faller's failure to identify any ongoing civil disability suffices to justify denial of the petition.

This independently sufficient reason for denial obviates the need to wade deeper into Faller's allegations against various federal agencies, judges, and indeed Faller's own former secretaries and colleagues. *See Castano*, 906 F.3d at 463; Petition at 3–5. Many of the issues he raises have already been addressed many times at prior stages of this case and in related litigation. *See, e.g.*, Petition at 20–24. Those rulings command deference and in some instances finality; certainly Faller hasn't explained why this Court should revisit them. *See, e.g.*, *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (cleaned up).

---

[2] The meaning of Faller's "professions of past" remain unclear. His past professions reportedly include work as an "investigator and autodidact-lawyer" providing legal consulting services. Petition at 2. The underlying tax case addressed earnings from "services as a consultant and private investigator." Indictment (DN 1) ¶ 2.

Faller complains of a "[s]tolen computer" and denial of his right to appeal, for instance. But the Sixth Circuit's affirmance on direct appeal addressed the computer and rejected Faller's claim. *See Faller*, 675 F. App'x at 560 ("Faller makes no showing that the government possessed the laptop, he merely asserts—without any support—that the associate who supposedly sent the computer off for repairs was part of the government's conspiracy to get him."). And because *coram nobis* "is generally not appropriate for claims that could have been raised on direct appeal," the writ is also not appropriate for claims that the petitioner in fact raised on direct appeal. *Castano*, 906 F.3d at 464. So the Court denies Faller's petition for writ of *coram nobis* because he fails to make the required showing to meet the threshold issue of an ongoing civil disability.

**B. Darlene Price's motion.** After Faller filed his petition, a non-party named Darlene Price moved to "intervene as *amicus curiae*" (DN 442). Because she appears to lack any personal interest in Faller's conviction, the Court construes this as a motion to file an *amicus curiae* brief, not a motion to intervene.

"The Federal Rules of Civil Procedure do not address motions for leave to appear as *amicus curiae* in a federal district court, and the decision to allow an appearance as *amicus curiae* falls under the district court's inherent authority." *E.g.*, *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, No. 1:15-cv-1191, 2017 WL 11454764, at *1 (W.D. Mich. Oct. 30, 2017).[3] When deciding whether to allow such participation in another's case, district courts consider the timeliness and usefulness of the brief. *Id.* Even assuming the brief is timely, however, it is not useful.

The bulk of the brief (and the accompanying motion, *see* DN 442-1) is another recitation of Faller's allegations of a nefarious intergovernmental conspiracy to destroy his life as a law-abiding citizen. Like numerous other filings by Faller, Price's brief points to no legal sources or factual support that would help the Court assess Faller's claims. *See* DN 442-1 at 8–11 (asserting concern for Faller's Equal Protection and Due Process rights). This duplication serves primarily to clog the Court's docket and slow the flow of judicial decisions for other litigants. Nor is it clear how any such past constitutional violation would amount to an ongoing civil disability. *See Craig*, 907 F.2d at 658 ("[T]he disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past."). So

---

[3] Although Faller's petition appears as part of his criminal case on the Court's criminal docket, the Federal Rules of Civil Procedure apply rather than their criminal counterpart. "Because of the similarities between *coram nobis* proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in *coram nobis* cases. It follows, in our view, that although a *coram nobis* motion is a step in a criminal proceeding, it is, at the same time, civil in nature and subject to the civil rules of procedure." *United States v. Johnson*, 237 F.3d 751, 754 (6th Cir. 2001) (cleaned up).

the Court denies Price's motion to participate—as *amicus* or otherwise—in the case (DN 442).

**C. Motion to disqualify.**  In line with these strident allegations, Faller previously moved (unsuccessfully) to disqualify the magistrate judge.  DN 418.  He also has sought the direct supervision of a Justice of the Supreme Court in light of the alleged "corruption" in his case.  Motion Requesting Oversight (DN 424-1).  That corruption allegedly includes "assassination attempts, manufacturing evidence, kidnapping witnesses, judicial corrupt acts, (directly and collateral) cover ups, witness intimidation, extortion, false arrests, holding defendants under indictment for more than (16) years, racketeering, sex trafficking and a plethora of other acts designed to silence a whistleblower."  *Id.* at 2.  The Supreme Court doesn't appear to have acted yet on this request.[4]

Faller later moved to disqualify the presiding District Judge, Magistrate Judge Brennenstuhl, and all other judges in the Sixth Circuit.  DN 449.  After a referral, Judge Brennenstuhl issued a report and a recommendation that the Court deny Faller's disqualification motion.  DN 450.  Faller filed a timely objection.  DN 451.  But it identified no "part of the order that is clearly erroneous or is contrary to law."  FED. R. CIV. P. 72(a).  This suffices to warrant dismissal.

The Magistrate Judge properly cited the standards to disqualify a judge.  DN 450 at 1–4.  He also explained in detail how Faller had not made the required showing and failed to demonstrate any bias.  *Id.* at 4–5.  Instead, Faller's motion had merely

---

[4] Supplemental filings by Faller make further unfounded and generalized accusations of corruption against the federal judiciary as a whole.  *See, e.g.*, DN 425 at 1–2:

> This Court has entered some troubling orders [in] this matter (continuing a *prima facially* false conviction) and the collateral conduct of the government in this and other matters is not only outrageous, it is the epitome of constitutional violations.  The undersigned has screamed to plugged ears of the horrific travesties taking place that caused the death of two of his children, the rape of his child and the suicide by cancer of his wife, not to mention (8) eight false indictments that there is a CONSPIRACY.  The undersigned worked for and advised United States Justice [*sic*] Posner for a year and advised United States Justice that the current status quo of the *Judicial Conference's* position to deny, deny, deny *pro se* litigants and never acknowledge a conspiracy, even after serious proof, is perhaps, one of the most dangerous ongoing threats to our nation.  This same threat is now at the door of this Court, to die here or continue in an even stronger form.  As Posner stated in his last days of practice, *"no one has even heard of the things that have happened to you, Faller."*  That's because no one ever survived it, [but] I did.

However troubling these accusations, none appear supported by facts in the record, and none would address the deficiencies of his *coram nobis* petition described above even if they were proven.

"recit[ed] the allegations he has advanced in support of his underlying" petition, which the Court denied above. *Id.* at 2. The objection, rather than identifying and explaining any legal or factual error by the Magistrate Judge, again repeats similar allegations about a mass governmental conspiracy against him—apparently extending to *all* judges in the Sixth Circuit. This lack of legal argument will not suffice to sustain an objection.

**D. Motion for injunction.** Finally, Faller has asked this Court to enjoin the IRS from "any further harassment" of him "pending the outcome" of his petition for writ of *coram nobis*. DN 452 at 1 (citing FED. R. CIV. P. 65). He seeks to block the IRS from collecting money he owes as a result of convictions he deems unlawful. *See id.* at 4–6. Faller hasn't shown any likelihood of success on the merits (the petition has now been denied), irreparable harm, substantial harm to others or harm to the public (who'd benefit from payment of his tax-related debts). *See, e.g.*, *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). So the Court denies the motion for an injunction (DN 452).

**E. Faller's other filings.** Since filing the petition, Faller has filed multiple "supplement[s]" and "notice[s]" attempting to expedite ruling. *See, e.g.*, DNs 405, 423, 432, 451.[5] These filings did not provide further direction on the legal issues presented or factual material unavailable at the time Faller initially petitioned for a writ of *coram nobis*. Instead, they are almost exclusively duplicative recitations of Faller's grievances with respect to his history with the criminal-justice system. And they have succeeded only in delaying the Court's efforts to adjudicate his petition and other motions.

At times Faller has falsely claimed that he has, for example, been falsely indicted seven times and that each indictment has been dismissed. "Notice of No Conspiracy Theory" (DN 432) at 1. But Faller's petition seeks to overturn a *guilty* verdict on one of those indictments, and this is not the first time an indictment has resulted in Faller's conviction. *See, e.g.*, *id.* at 2 ("The Courts throughout the United States have bought into the assertion that Faller is a conspiracy theorist, notwithstanding the fact that Faller has been falsely indicted … seven times. All of those indictments have been dismissed …."); *United States v. Murray*, 154 F. App'x 740 (11th Cir. 2005) (affirming Faller's convictions in a previous case). It's not clear from the record that *any* of these indictments were dismissed. But whatever relief the many filings and pending motions in this case seek, the *coram nobis* petition is at

---

[5] Faller also filed three "motion[s] to notice" that his petition was pending (DN 437), that he filed a petition for writ of *mandamus* in the Sixth Circuit (DN 438), and that his related civil case supports the *coram nobis* petition (DN 439). These motions do not request relief independent of his original petition, and their content does not affect the outcome of this ruling.

their root.[6]  And to the extent the information in these supplemental filings isn't duplicative or obviously wrong, it wouldn't affect the Court's ruling above on the *coram nobis* petition.

## ORDER

The Court denies Faller's petition for writ of *coram nobis* (DN 405), motion for a hearing (DN 443), objection to the report and recommendation (DN 451), and motion for injunctive relief (DN 452). The Court adopts the Magistrate Judge's report and recommendation (DN 450) denying the motion to disqualify (DN 449).  Finally, the Court denies the motion to participate as *amicus curiae* (DN 442).  Given the denials, the Court also denies as moot Faller's motion to expedite the case (DN 427), motion to "notice action is due" (DN 437), and motions to notice (DNs 438 & 439).  The Court further denies any and all pending motions as moot and strikes this case from the Court's active docket.

Benjamin Beaton, District Judge
United States District Court

June 10, 2024

---

[6] After filing his petition, Faller filed a motion for a hearing (DN 443).  The motion cites no law supporting the request for a hearing, but it refers to letters from Darlene Price (DN 444-2) and Kentucky State Senator Adrienne Southworth (DN 444-3) that support the request.  These letters likewise fail to cite any law; they merely reiterate the allegations of a governmental conspiracy against Faller.  *Compare* DNs 405 and 444-2.  Because the Court lacks any reason to believe a hearing would be fruitful, the Court denies Faller's request for one.  *Cf. Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (in *habeas corpus* cases, a district court must hold a hearing only if the ruling will turn on factual disputes that are not clearly contradicted by the record); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

7